IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| AMELIA AGUILAR BERNAL,          § | |
|     Petitioner,          § | |
| § | |
| v.          § | No. MO:12-CV-00091-DC |
| § | |
| GERARDO BAHENA GONZALEZ,          § | |
|     Respondent.          § | |

**MEMORANDUM OPINION HOLDING IN ABEYANCE CONTEMPT PROCEEDINGS**

On June 24, 2015, the Court held a Status Conference regarding the ongoing contempt proceedings in this case, originally arising under the Hague Convention on the Civil Aspects of International Child Abduction (hereinafter ''the Convention''), Oct. 24, 1980, T.I.A.S. No. 11670, S. Treaty Doc, No. 99–11. (Doc. 1). Petitioner Amelia Aguilar Bernal ("Petitioner") appeared through counsel, Rodolfo Sanchez, who made an appearance via telephone. Respondent Gerardo Bahena Gonzalez ("Respondent") appeared in person without his attorney, Richard C. Abalos.[1] The proceedings were translated into Spanish by a court interpreter. The Court, after considering the procedural history of this case and the parties' arguments and evidence presented at the Status Conference, ruled from the bench that the contempt proceedings would be held in abeyance until the custody dispute in the Republic of Mexico is resolved. This Opinion memorializes and explains the Court's verbal bench ruling as to the matters heard at the June 24th Status Conference referenced above.

                **I.**        **PROCEDURAL HISTORY AND BACKGROUND FACTS**

The Court's Judgment granting Petitioner relief under the Convention sets forth in detail the underlying facts of this case. *Bernal v. Gonzalez*, 923 F. Supp. 2d 907, 911 (W.D. Tex. 2012). Petitioner and Respondent were married in Elk Point, South Dakota, on January 31, 2003, and are the parents of four children: A.B. (male), C.G.B., C.D.B., and A.B. (female). *Bernal*, 923 F. Supp. 2d at

---

[1] Mr. Abalos was unable to attend the Status Conference due to a sudden illness.

1

911. A.B. (male) is not subject to this suit.[2] C.G.B. and C.D.B. are twins born in Iowa in 2002. *Id*. A.B. (female) was also born in Iowa in 2007. *Id*.

In 2008, Petitioner and Respondent moved to Guasaves, Sinaloa, Mexico, from the United States, with their four children. *Id*. Petitioner and Respondent had marital problems and separated in 2010. *Id*. On December 16, 2010, Petitioner and Respondent entered into an agreement regarding the care of their four children at the Office of Integral Family Development Agency, or *Desarrollo Integral de La Familia* ("DIF")[3] in Guasaves, Sinaloa, Mexico. The parties agreed in writing in the presence of a *Ministerio Publico*[4] that: (1) Respondent would pay weekly child support for A.B. (male), C.G.B., C.D.B., and A.B. (female); and (2) Respondent would have weekend visitation rights. *Id*. The agreement restricted Respondent's visitation to locations within Sinaloa, Mexico. *Id*.

On or about March 25, 2011, Respondent took A.B. (male), C.G.B., C.D.B., and A.B. (female) from Guasaves, Sinaloa, Mexico to the United States without the consent or acquiescence of Petitioner. *Id*. at 912. Petitioner filed her Verified Petition for Return of Children on August 27, 2012. (Doc. 1). On May 2, 2012, Respondent filed for divorce in a Texas court. *Id*. at 913. A default judgment was entered by the Texas court on July 26, 2012, and Respondent was awarded sole managing custody of the children. *Id*.

**A.     Adjudication of the Petition for Return of Children**

Pursuant to the consent of the parties (Docs. 17, 18), the U.S. Magistrate Judge for the Western District of Texas, Midland/Odessa Division, held a bench trial and heard testimony from Petitioner and Respondent. *Bernal*, 923 F. Supp. 2d at 911. In accordance with Article 3 of the Convention and the International Child Custody Abduction Remedies Act, Petitioner proved by a preponderance of the evidence that C.G.B., C.D.B., and A.B. (female) were wrongfully removed

---

[2] A.B. (male) was born in 1996 in California, and thus, is above the age eligible for return under the Hague Convention on the Civil Aspects of International Child Abduction. *Id*.
[3] The Integral Family Development Agency, or DIF, is a national Mexican social welfare organization dedicated to family issues such as child welfare. *Id*.
[4] In the Republic of Mexico, a *Ministerio Publico* is equivalent to a district attorney. *Id*.

from their country of habitual residence. *Id.* at 914. Further, Petitioner had rights of custody under the laws of the State in which the children were habitual residents immediately before removal and was exercising those rights before removal. *Id.* Respondent's removal of C.G.B., C.D.B., and A.B. (female) breached Petitioner's rights of custody. *Id.*

Moreover, the Court determined that no affirmative defenses were proven to halt the return of the children. Specifically, Respondent failed to establish by clear and convincing evidence a grave risk that returning C.G.B., C.D.B., and A.B. (female) would expose the children to physical or psychological harm or otherwise place the children in an intolerable situation in accordance with Article 14 of the Convention and the International Child Custody Abduction Remedies Act. *Id.* Likewise, Respondent failed to establish by a preponderance of the evidence that C.G.B., C.D.B., and A.B. (female) were settled in their new environment in accordance with Article 12 of the Convention and the International Child Custody Abduction Remedies Act. *Id.* Finally, in accordance with Articles 16 and 17 of the Convention, the decision of the Texas court to award Respondent sole managing custody over the children was not a defense to returning C.G.B., C.D.B., and A.B. (female) to their country of habitual residence, the Republic of Mexico. *Id.* at 930.

Because C.G.B., C.D.B., and A.B.'s (female) habitual residence was the Republic of Mexico, and Respondent wrongfully removed the children to the United States in violation of the Convention, the Court granted Petitioner's Verified Petition for Return of Children on November 28, 2012. *Id.* Therefore, the Court entered a favorable Judgment for Petitioner and retained jurisdiction to permit any modification or enforcement of the Order requiring Respondent to return C.G.B., C.D.B, and A.B. (female) to the custody of Petitioner Bernal. *Id.* However, Respondent did not immediately return the three children in compliance with the Court's Judgment.

On December 18, 2012, Petitioner filed a Motion to Enforce Judgment and Application for Clerk to Issue Writ of Attachment. (Doc. 50). Because Respondent failed to return C.G.B., C.D.B., and A.B. (female) to Petitioner after she prevailed in her suit under the Hague Convention, the Court

granted the motion to enforce Judgment and ordered Respondent to deliver C.G.B., C.D.B., and A.B. (female) to Petitioner's designee at the Consulate for the Republic of Mexico located at 910 E. San Antonio Avenue, El Paso, Texas, on or before 1:00 p.m., on Saturday, December 22, 2012.  (Doc. 51).  Respondent was warned that failure to deliver the children would result in the issuance of a Writ of Attachment authorizing the United States Marshals Service to locate the children and deliver them to the designee in El Paso, Texas, at Respondent's expense.  (*Id*.).  Respondent complied with the Court's Order and delivered the children to Petitioner's designee at the Consulate for the Republic of Mexico in El Paso, Texas, on December 22, 2012.  (Doc. 53).

**B.     Contempt Proceedings**

On February 22, 2013, Petitioner filed a Motion for Contempt (Doc. 52) alleging that Respondent returned to Guasaves, Sinaloa, Mexico, on or about February 7, 2013, and re-abducted C.G.B. and C.D.B. in violation of the Court's Order and in violation of Petitioner's custody rights under the laws of the Republic of Mexico.  (Doc. 53 at 1).  On March 1, 2013, the Court found that Petitioner had established by clear and convincing evidence the prima facie elements necessary to find Respondent in contempt: "(1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order."  (Doc. 53 at 2-3).

On March 19, 2013, the Court held a Show Cause Hearing, at which Respondent had the burden to show that he did not violate the Court's Order or was excused from complying with the Court's Order.  (Doc. 61).  At the hearing, Respondent testified and both parties entered evidence into the record.  Petitioner's testimony and the parties' exhibits revealed the following:  (1) on or about February 7, 2013, Respondent returned to Mexico with his oldest child; (2) upon arrival Respondent went to the *Desarrollo Integral de Familia* ("DIF") in Gusaves, Sinaloa, Mexico, and filed a complaint against Petitioner; (3) while at DIF Respondent used a copy of the Crane County, Texas default judgment divorce as proof that he had custody of the children; (4) DIF picked up

4

C.G.B., C.D.B., and A.B. (female) from Petitioner's home on February 7, 2013; (5) DIF delivered C.G.B. and C.D.B. to Respondent on February 8, 2013, and allowed Petitioner to keep A.B. (female); (6) Respondent did not file suit for custody with a court in the Republic of Mexico; (7) Respondent never visited with a private attorney about custody; and (8) no decision on the custody of the children was made by a court in the Republic of Mexico.

On March 20, 2013, the Court held Petitioner's Motion for Contempt in abeyance to allow "the parties [to] work together to make significant progress toward securing a ruling from a court in the Republic of Mexico regarding custody of the children involved in this action." (*Id.*). Thereafter, the Court held several status conferences. (Docs. 65, 69, 76). The status conference on April 25, 2013, revealed that the parties were "working in good faith toward taking action in a court in Mexico." (Doc. 65). Petitioner proposed an agreement which would be filed by Mexican counsel as *divorcio voluntario* in a court in Mexico.[5] (*Id.*). Respondent also informed the Court that he was preparing to file suit in Mexico for divorce and custody of the children. (*Id.*).

Another status conference held on July 22, 2013, revealed that the parties were no longer making significant progress. (Doc. 69). The Court again held Petitioner's Motion for Contempt in abeyance and set a third status conference to determine whether: "(1) an agreement has been reached as to custody and filed in a court in the Republic of Mexico; or (2) suit has been filed for custody in a court in the Republic of Mexico." (*Id.*). Specifically, the Court warned Respondent that an unfavorable decision on the Motion for Contempt would be rendered against him if he did not make significant progress toward either reaching an agreement with Petitioner or bringing suit in a court in Mexico to resolve the custody dispute. (*Id.*).

---

[5] The proposed substance of the *divorcio voluntario* would have included a custody agreement, divorce, eight weeks of visitation each summer, child support to Petitioner, and medical support for the child in her custody. (*Id.*). At the status conference, Respondent agreed to some of the terms, including the custody arrangement and portions of the visitation agreement. (*Id.*). However, the child support, medical support, entry of divorce in Mexico, and dismissal of the criminal charges filed by Respondent against Petitioner were still disputed. (*Id.*). Thus, no agreement had "been reached and all proposals are just that—proposals." (*Id.*).

On September 16, 2013, the Court held a final status conference at which time an agreement as to custody between the parties had not been reached and suit had not been filed in a court in Mexico. (Doc. 79 at 3). Based on the testimony and evidence presented by the parties at the Show Cause Hearing, the Court held Respondent in contempt for violating the Court's Judgment on September 18, 2013. (*Id*. at 1). Respondent admitted that he did not pursue custody of his children in a court in the Republic of Mexico. (*Id*. at 5). Rather, he filed a complaint with DIF alleging Petitioner to be an unfit mother and providing DIF with a copy of the default judgment from the court in Crane County, Texas, which awarded Respondent sole managing custody of the children. (*Id*. at 5-6). DIF gave Respondent custody of C.G.B. and C.D.B. the day after he filed his complaint. (*Id*. at 6). Respondent took advantage of this opportunity and returned to the United States without seeking custody of his children in a court in the Republic of Mexico. (*Id*.).

By relying on the Texas court's default judgment to obtain his children from DIF and returning to the United States without pursuing custody in a court of the Republic of Mexico, Respondent defied the Court's November 29, 2012 Judgment, which held: "this Court's determination that C.G.B., C.D.B., and A.B. (female) were wrongfully removed from their country of habitual residence under the Convention preempts the default judgment in state court that awarded sole managing custody." *Bernal*, 923 F. Supp. 2d at 928–29. Moreover, Respondent failed to establish by a preponderance of the evidence that he was excused from complying with the Court's Order to return the children to Petitioner in the Republic of Mexico and pursue custody in the courts of Mexico. *Id*. at 930–31; (Doc. 79 at 6). Therefore, the Court entered an Order holding Respondent in Contempt and requiring Respondent to pay $50.00 per day until he returned C.G.B. and C.D.B. to Petitioner in Cabrera de Limones, Sinaloa, Mexico. (*Id*. at 6-7).

In the Contempt Order, the Court explained that the fine would "accrue daily until Respondent Bahena Gonzalez returns C.G.B. and C.D.B." (*Id*. at 7). The Court again warned Respondent that if he "wants custody of C.G.B., C.D.B., and A.B. (female), **he must seek custody in**

**a court in the Republic of Mexico**." (*Id.*) (emphasis in original). The Court advised Respondent that if he returned "to the United States with C.G.B., C.D.B., and A.B. (female) without legal right to custody of the children, Respondent will again be held in contempt" and may be subject to another suit under the Convention. (*Id.*).

Lastly, the Court required Respondent's attorney to file "a notice of compliance with the Court" once Respondent returned C.G.B. and C.D.B. (*Id.*). The $50.00 per day contempt fine, payable to the United States District Clerk, Midland/Odessa Division, Western District of Texas, began to run September 18, 2013, the date of the Court's Order holding Respondent in contempt. (*Id.*). Due to Respondent's continued violation of the Contempt Order, the Court increased the daily fine amount from $50.00 per day to $100.00 per day, effective May 2, 2014, to accrue until Respondent "returns C.G.B. and C.D.B. to Petitioner Aguilar Bernal in Cabrera de Limones, Sinaloa, Mexico." (Doc. 95 at 2). To date, C.G.B. and C.D.B. have not been returned to Petitioner and no notice of compliance has been filed by Respondent.

## II.     STANDARD OF REVIEW

The International Child Abduction Remedies Act, 42 U.S.C. §§ 11601 *et seq*. ("ICARA"), implementing the Hague Convention on the Civil Aspects of International Child Abduction, T.I.A.S. No. 11,670, 1343 U.N.T. S. 89 (Oct. 25, 1980), entitles a person whose child has been wrongfully removed to, or wrongfully retained in, the United States, usually by a parent, to petition a federal court to order the child returned. 42 U.S.C. § 11603(b). ICARA unequivocally limits the scope of U.S. courts to decide "rights under the Convention and not the merits of any underlying child custody claims." 42 U.S.C. 11601(b)(4). The purpose of ICARA is to give courts the tools to implement the Convention's primary goals of "restor[ing] the pre-abduction status quo and . . . deter[ring] parents from crossing borders in search of a more sympathetic court." *England v. England*, 234 F.3d 268, 271 (5th Cir. 2000) (quoting *Friedrich v. Friedrich*, 78 F.3d 1060, 1067 (6th Cir. 1996)).

**A.      Jurisdiction**

A court considering a Hague Convention petition has jurisdiction only over the wrongful removal or retention claim. *See* Convention, art. 16; 42 U.S.C. § 11601(b)(4). A court's jurisdiction is proper when the alleged wrongfully removed children are physically located within the court's jurisdiction. 42 U.S.C. § 11603(b). The merits of any underlying custody case are of no concern in a Hague Convention case. *Friedrich,* 983 F.2d at 1400; Convention, art. 19. The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence. *See* Convention Preamble, Treaty Doc., at 7. Ordering a return remedy does not alter the existing allocation of custody rights but does allow the courts of the home country to decide what is in the child's best interests. *Abbott v. Abbott*, 560 U.S. 1, 20 (2010); Convention, art. 19.

**B.      Contempt**

"A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995). "Upon a finding of contempt, the district court has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005) (citing *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000)). There are two types of contempt—civil and criminal. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826–27 (1994).

A contempt order or judgment is characterized as either civil or criminal depending upon its primary purpose. *Lamar Financial Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990). If the purpose of the sanction is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal. *Id*. Criminal contempt is a crime "in the ordinary sense," and thus all constitutional rights afforded criminal defendants must be provided to those charged with criminal

contempt. *Id*. at 826.  By contrast, "[j]udicial sanctions in civil contempt proceedings [are] employed for either or both of two purposes: to coerce the defendant into compliance with the court's order [or] to compensate the complainant for losses sustained."  *Am. Airlines, Inc.,* 228 F.3d at 585 (internal quotation marks omitted).

A key determinant in this inquiry is whether the penalty imposed is absolute or conditional on the contemnor's conduct.  *Lamar,* 918 F.2d at 566.  In selecting the appropriate contempt sanction, "a court is obliged to use the least possible power adequate to the end proposed."  *Spallone v. United States*, 493 U.S. 265, 276 (1990).  A coercive fine may be imposed so long as the contemnor "is afforded an opportunity to purge," i.e., a "subsequent opportunity to reduce or avoid the fine through compliance."  *Bagwell*, 512 U .S. at 829.

### III.   DISCUSSION

In granting the Petition for Return of Children and ordering Respondent to return C.G.B., C.D.B., and A.B. (female), to the Petitioner in the Republic of Mexico, the Court expressed no opinion on a custody determination.  *See Bernal*, 923 F. Supp. 2d 907, 930–31.  Rather than deciding on the merits of rights of custody, the Court only determined Petitioner's right to a return remedy under the Convention.  42 U.S.C. § 11601(b)(4).  Indeed, the Convention makes clear that courts "are [not] to decide on the merits of rights of custody," art. 16, and "[a] decision under this Convention concerning the return of the child shall not be taken to be a determination of the merits of any custody issue," art. 19.

Notably, the drafters of the Convention sought to solve the problem of transborder child abductions perpetrated by noncustodial parents "to establish artificial jurisdictional links . . . with a view to obtain custody of a child."  Elisa Perez–Vera, Explanatory Report ("Perez–Vera Report"),

¶ 11, p. 426 (1982).[6]  The Convention seeks, in part, to remedy abuses by noncustodial parents who attempt to circumvent adverse custody arrangements or decrees granting sole custodial rights to the other parent by seeking a more favorable judgment in a second nation's family court system.  *Id.* ¶ 14, at 439.  Accordingly, when a noncustodial parent abducts a child across international borders, the best remedy is return of that child to his or her country of habitual residence—or, in other words, return of the child to his or her custodial parent.  *Id.* ¶ 18, at 430.  Because Respondent, the noncustodial parent, abducted the children and brought them from the Republic of Mexico to the United States in order to obtain a more favorable custody arrangement in the Texas family court system, the Court granted the Petition pursuant to the Convention and ordered Respondent to return C.G.B., C.D.B., and A.B. (female) to their custodial parent, Petitioner, in the Republic of Mexico.

A.   **Respondent's Violation of the Return Remedy**

As explained in its Judgment, the Court held that the Republic of Mexico was the habitual residence of C.G.B., C.D.B., and A.B. (female), and thus, ordered Respondent to return the children to Petitioner in Mexico.  *See Bernal*, 923 F. Supp. 2d at 914–31.  The Court expressly recognized that a custody determination had to be left to the law of Mexico.  *Id.* at 930.  As previously explained, "[a] return remedy does not alter the pre-abduction allocation of custody rights but leaves custodial decisions to the courts of the country of habitual residence."  *Abbott*, 130 S.Ct. at 1989.  Therefore, the pre-abduction allocation of custody rights, as defined by the parties' December 16, 2010, agreement at the DIF in Guasaves, Sinaloa, Mexico, was not altered by this Court's Judgment granting the Petition for Return of Children.  *Id.*

Following the children's return to the Republic of Mexico on December 22, 2012, Respondent still only had weekend visitation rights restricted to locations within Sinaloa, Mexico, as specified by the parties' signed agreement at DIF on July 26, 2012.  *Bernal*, 923 F. Supp. 2d at 911–

---

[6] The Perez–Vera Report is the official history for the Convention and "a source of background on the meaning of the provisions of the Convention available to all States becoming parties to it."  Legal Analysis of Hague Convention on the Civil Aspects of International Child Abduction, 51 Fed. Reg. 10503 (1986).

12.     Likewise, Petitioner remained the custodial parent under the parties' 2010 agreement.  Yet, Respondent attempted to circumvent the 2010 custody agreement by presenting a default judgment divorce, entered by a Texas court on July 26, 2012, to the DIF following this Court's Judgment granting the Petition for Return of Children under the Hague Convention.  By doing so, Respondent blatantly ignored the Judgment, which states "this Court's determination that C.G.B., C.D.B., and A.B. (female) were wrongfully removed" from Petitioner's custody in the Republic of Mexico "preempts the default judgment in state court that awarded sole managing custody" to Respondent.  *Bernal*, 923 F. Supp. 2d at 929.

Instead of initiating a lawsuit in a court of Mexico to modify the parties' custody arrangement, as this Court advised Respondent to do if he wanted custody of the children, Respondent relied on the preempted default judgment divorce from the Texas state court to persuade DIF to give him C.G.B. and C.D.B.  (*Id.* at 930).  Then, Respondent re-abducted C.G.B. and C.D.B and brought them from Mexico to the United States on or about February 7, 2013, directly violating the Court's Judgment and order that the children be returned to their custodial parent, Petitioner, in the Republic of Mexico.  (Doc. 79 at 2).

**B.     Civil Contempt Proceedings to Coerce Respondent's Compliance with the Judgment**

Approximately seven (7) months after Respondent re-abducted C.G.B. and C.D.B. and brought them back to the United States, the Court held a hearing on Petitioner's Motion to hold Respondent in contempt due to his continued refusal to return the children to Mexico.  (Doc. 79).  The Court retained jurisdiction since the wrongfully removed children, C.G.B. and C.D.B., were physically located within the Court's jurisdiction.  42 U.S.C. § 11603(b).  The Order holding Respondent in contempt quoted the relevant portion of its Judgment, which Respondent had violated:

> All parties agree that this is a difficult case.  Respondent had rational reasons for taking his children from Guasaves, Sinaloa, Mexico, to the United States; however, this Court is limited to deciding rights under the Convention and not the merits of the underlying child custody claim.  *See* 42 U.S.C. § 11601(b)(4).  Courts do not apply the best interest of the child standard when determining whether return of children to

>their country of habitual residence is appropriate. Nothing decided in these proceedings prejudices Respondent Gonzalez' ability to file suit in the Republic of Mexico for custody of C.G.B., C.D.B., and A.B. (female). The Convention and ICARA "deter[s] parents from crossing borders in search of a more sympathetic court." *England v. England*, 234 F.3d 268, 271 (5th Cir. 2000) (quoting *Friedrich v. Friedrich*, 78 F.3d 1060, 1067 (6th Cir. 1996)). Thus, "leav[ing] custodial decisions to the courts of the country of habitual residence." *Abbott v. Abbott*, 560 U.S. 1, [9] (2010); Convention, art. 19. The parties' custody agreement dictates that "[i]n case of failure to comply with this agreement, each one may proceed on their own in conformance with the law." Ex. P-6. Respondent, if he so chooses, may pursue custody of C.G.B., C.D.B., and A.B.'s (female) in the courts of the Republic of Mexico.
>
>Based on the aforementioned, this Court finds that C.G.B., C.D.B., and A.B.'s (female) habitual residence is the Republic of Mexico and that the children were wrongfully removed to the United States in violation of the Convention. Petitioner Amelia Aguilar Bernal's Verified Petition for Return of Children is **GRANTED**.
>
>**IT IS HEREBY ORDERED** that C.G.B., C.D.B., and A.B. (female) shall be immediately returned to the custody of Petitioner Bernal.

(Doc. 79 at 4) (quoting *Bernal*, 923 F. Supp. 2d at 930–31). Because Respondent re-abducted C.G.B. and C.D.B., bringing them back to the United States without filing a formal lawsuit in the appropriate judicial or administrative agency of the Republic of Mexico to determine, enforce, or modify his custody rights, the Court found that Respondent violated the Court's Judgment and held him in contempt. (*Id.*).

**C.    Accrual of Contempt Fine**

The Court's September 18, 2013, Contempt Order was expressly designed to coerce Respondent's compliance with the November 29, 2012, Judgment granting the Petition for Return of Children. (Doc. 79). "[A] fine that accrues on an ongoing basis in response to noncompliance" is a remedy in civil contempt proceedings. *In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009). Thus, the Court ordered Respondent to be fined $50.00 per day, starting September 18, 2013, to coerce Respondent into returning "C.G.B. and C.D.B. to Petitioner Bernal in Cabrera de Limones, Sinaloa, Mexico." (Doc. 79 at 7). The Court explained that the fine would accrue daily "until Respondent

Bahena Gonzalez returns C.G.B. and C.D.B." (*Id*.). Lastly, the Court ordered Respondent's attorney to "file a notice of compliance with the Court" once Respondent returned C.G.B. and C.D.B. (*Id*.).

On April 3, 2014, the Court held a Show Cause hearing to determine whether Respondent should still be held in contempt. (Doc. 91). The Court determined that Respondent remained in violation of the Court's Contempt Order for failing to return the children, C.G.B. and C.D.B., to Petitioner in Cabrera de Limones, Sinaloa, Mexico.[7] (*Id*.). The Court held three more Status Conferences on May 1, 2014, May 29, 2014, and July 1, 2014, at which time the Court "learned that Respondent remains in violation of the Court's Contempt Order." (Docs. 95, 97, 100). Due to Respondent's failure to return C.G.B. and C.D.B. to Petitioner, the Court increased the daily fine amount from $50.00 per day to $100.00 per day, effective May 2, 2014, to accrue until Respondent "returns C.G.B. and C.D.B. to Petitioner Aguilar Bernal in Cabrera de Limones, Sinaloa, Mexico." (Doc. 95 at 2). The Court advised Respondent that the fine would continue to accrue at one hundred dollars ($100.00) a day until he returns C.G.B. and C.D.B. to Petitioner. (*Id*.).

On August 11, 2014, Petitioner filed a Status Report advising the Court that on August 8, 2014, she was formally served with a Petition seeking the termination of her parental rights ("*patria*

---

[7] On October 9, 2013, the Court received correspondence from Petitioner's attorney advising that Respondent had returned the children to Mexico; however, they were returned to Petitioner's brother and sister-in-law and not directly to Petitioner. (Doc. 81 at 1). Because the Court had "not received any correspondence from Respondent's attorney or the filing of a notice of compliance," the $50.00 per day fine continued to accrue. (*Id*.). In a Status Report filed on March 20, 2014, Petitioner explained that "the children are now residing with Petitioner's sister, Marisela Aguilar Bernal and her husband in Guasave, Sinaloa (having previously bene with Petitioner's brother Jose Cornelia Aguilar Bernal and his wife in Guasave, Sinaloa), but Petitioner still does not have access to or regular contact with them due to Respondent['s] apparent prohibition against it." (Doc. 84 at 1). Petitioner further advised the Court that she had "not been notified of any civil court proceeding that Respondent Bahena Gonzalez may have initiated regarding the custody of the children, nor does she have any independent awareness of such a proceeding." (*Id*.). The only proceeding initiated in Mexico by Respondent of which Petitioner was aware at the time of her Status Report was "a criminal investigation of her for alleged abuse of the children." (*Id*. at 1-2). Respondent made this complaint to the local prosecutor's office sometime after he had caused the DIF to remove C.D.B. and C.G.B. from Petitioner's custody in February 2013. (*Id*. at 2). Petitioner formally denied Respondent's allegations and presented testimony and evidence to the investigators in compliance with their requests. (*Id*.). Petitioner further described how she had filed charges against Respondent with the local prosecutor's office in Guasave, Sinaloa, for international child abduction and making false statements to officials. (*Id*.). Petitioner also lodged complaints against Respondent for failure to enroll the children, C.D.B. and C.G.B., in school. (*Id*.). Finally, Petitioner filed a complaint with the Sinaloa Human Rights Commission against the local DIF that removed C.D.B. and C.G.B. from her home in February 2013 and delivered them to Respondent. (*Id*.).

*potestad*") of her three children that was filed by Respondent in the Court of General Jurisdiction of First Instance of Guasaves, Sinaloa, Mexico. (Doc. 102 at 1).[8]  On August 14, 2014, the Court held a Status Conference regarding Respondent's continued noncompliance with the Court's Contempt Order. (Doc. 105). The Court determined that Respondent remained in contempt and the fine continued to accrue at $100.00 per day until Respondent returned C.G.B. and C.D.B. to Petitioner. (*Id*.). On September 22, 2014, Petitioner filed an Advisory reporting that she had responded to Respondent's lawsuit pending against her in the Court of General Jurisdiction of First Instance of Guasaves, Sinaloa, Mexico, in which Respondent was seeking to terminate Petitioner's parental rights to her three minor children. (Doc. 107 at 1).[9]

On October 2, 2014, the Court held another Status Conference. (Doc. 110). Respondent's most recent payment toward the contempt fine was made on September 23, 2014, bringing the total amount of payments made to Five Thousand Three Hundred Dollars ($5,300.00). (*Id*.). The Court determined that Respondent remained in violation of the Contempt Order and noted that the contempt fine continues to accrue at $100.00 per day until Respondent returns the children to Petitioner. (*Id*.). On December 19, 2014, the Court held another status conference and a discussion was held on the proceedings pending in the Republic of Mexico. (Doc. 119 at 2). At that time, there had been no order from a court of Mexico prohibiting Petitioner from visiting the children or adjudicating where the children would reside permanently. (*Id*.). The Court determined that Respondent remained in violation of the Contempt Order and again ordered the immediate return of the children, C.G.B. and C.D.B. to Petitioner. (*Id*.).

---

[8] Petitioner explained that Respondent "has still failed to return the children C.D.B. and C.G.B. to her as ordered by the Court on September 18, 2013 (Doc. 79)." (*Id*.). While the children continued to reside with Petitioner's sister, Marisela Aguilar Bernal, and Marisela's husband in Guasave, Sinaloa, Petitioner did "not have access to or regular contact with her children C.D.B. or C.G.B. due to Respondent Bahena Gonzalez's apparent prohibition against it." (*Id*.).
[9] Petitioner further stated that the children continued "to reside with Petitioner's sister" and she still did "not have access to or regular contact" with them due to Respondent's prohibition against it. (*Id*.).

On March 20, 2015, Petitioner filed a Status Report advising the Court that the case filed by Respondent in the civil courts of Guasaves, Sinoloa, Mexico, wherein he sought to terminate Petitioner's parental rights to her minor daughter, A.B., was dismissed for lack of evidence. (Doc. 121 at 1). However, the custody case involving C.D.B. and C.G.B. in Mexico was still pending. (*Id*. at 2). A Status Conference was held on March 25, 2015, at which time the Court learned that Respondent remained in violation of the Contempt Order since C.D.B. and C.G.B. had not yet been returned to Petitioner. (Doc. 124).

### D.     June 24, 2015 Status Conference

On June 19, 2015, Respondent filed an Advisory to the Court explaining that "the children in this case do not want to stay with their mother, refuse to stay with her, and instead are staying with their Aunt, Marisela Aguilar Bernal, in Nio, Guasave, Sinaloa, Mexico." (Doc. 128). Petitioner also filed a Status Report on June 19, 2015. (Doc. 129).[10] Petitioner reported that on June 2, 2015, the Judge of the Court of First Instance for Family Cases of Sinaloa De Leyva, Sinaloa, Mexico terminated the *patria potestad* or parental rights of Petitioner in the case initiated by Respondent bearing file number 1019/2014. (*Id*. at 1). On June 3, 2015, Petitioner filed an appeal of the First Family Court's order terminating Petitioner's parental rights. (*Id*.). According to Petitioner, an appeal of the court's order terminating her parental rights "is effectively a stay of enforcement or execution of the court's judgment and thus, the status quo is preserved." (*Id*.).

On June 24, 2015, the Court held its latest Status Conference. (Doc. 130). To this day, C.G.B. and C.D.B. have not been returned to Petitioner, and Respondent's attorney has not filed a notice of compliance with the Court because C.G.B. and C.D.B. continue to reside with Petitioner's sister in Guasave, Sinaloa, due to Respondent's prohibition of the return of the children to Petitioner.

---

[10] Petitioner asserts in her Status Report that Respondent still has not returned C.D.B. and C.G.B. to her, and that the children continue to reside with Petitioner's sister, Marisela Aguilar Bernal, and her husband, in Guasave, Sinaloa. (*Id*. at 2). Petitioner explains in her Status Report that she "still does not have access to or regular contact with her children C.D.B. or C.G.B. due to Respondent Bahena Gonzalez's apparent prohibition against it." (*Id*.).

The total contempt fine owing, as of the date of the Status Conference, June 24, 2015, is Fifty-Three Thousand and Two Hundred Dollars ($53,200.00), of which Respondent has paid Five Thousand and Three Hundred Dollars ($5,300.00).  Therefore, the outstanding contempt fine owed is Forty-Seven Thousand and Nine Hundred Dollars ($47,900.00).

### E.   Contempt Proceedings Held in Abeyance

The Court acknowledges that its discretion to impose sanctions has limits; there is not unlimited judicial power to impose noncompensatory civil contempt fines.  *See Bagwell*, 512 U.S. at 829.  "A contempt fine . . . is considered civil and remedial if it either coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained." *Id.* (internal quotation marks omitted).  Significantly, "[w]here a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." *Id.*  Thus, the U.S. Supreme Court has held, "a flat, unconditional fine totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Id.* (internal quotation marks omitted); *Hicks v. Feiock*, 485 U.S. 624, 633 (1988) ("If the relief provided is a fine, it is . . . punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order.").

It is of utmost importance that this Court secure Respondent's diligent compliance with the return remedy authorized under the Hague Convention and ordered by the Court's Judgment granting the Petition for Return of Children.  Yet, the Court is mindful that in devising a remedy against Respondent's refusal to return C.G.B. and C.D.B. to Petitioner, the least intrusive sanction should be selected that the Court determines will achieve compliance.  *Spallone*, 493 U.S. at 276; *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947) ("[W]here the purpose is to make the defendant comply, the court's discretion is otherwise exercised.  It must then consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any

16

suggested sanction in bringing about the result desired."). Hence, at this time, the Court will not continue imposing the daily fine and the contempt proceedings shall be held in abeyance.

Although sanctions are clearly warranted for Respondent's failure to comply with the Court's Judgment by re-abducting C.G.B. and C.D.B., as well as Respondent's failure to comply with the Contempt Order by refusing to return the children to Petitioner, continuing to sanction Respondent at this point in the contempt proceedings is less than satisfying. Perhaps, should such conduct persist in the future, the Court will be forced to explore additional civil contempt sanctions. However, the Court finds that Respondent has acted diligently since filing a custody lawsuit in the Republic of Mexico and serving Petitioner on August 8, 2014, to obtain resolution of the ongoing custody dispute in the courts of Mexico.

**IT IS HEREBY ORDERED** that the contempt proceedings shall be held in abeyance and the contempt fine shall not accrue past the date of the June 24, 2015 Status Conference pending further order of the Court.

It is so **ORDERED**.

SIGNED this 29th day of June, 2015.

_____
DAVID COUNTS
U.S. MAGISTRATE JUDGE