IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **AMELIA AGUILAR BERNAL,** | § | |
| *Petitioner*, | § | |
| | § | |
| **v.** | § | **No. MO:12-CV-00091-DC** |
| | § | |
| **GERARDO BAHENA GONZALEZ,** | § | |
| *Respondent*. | § | |

## MEMORANDUM OPINION AND ORDER
## ABATING FINE AND PURGING RESPONDENT OF CONTEMPT

On June 24, 2015, the Court held a Status Conference regarding the ongoing contempt proceedings in this case, originally arising under the Hague Convention on the Civil Aspects of International Child Abduction (hereinafter ''the Convention''), Oct. 24, 1980, T.I.A.S. No. 11670, S. Treaty Doc, No. 99–11.  (Doc. 1).  Having considered the record and applicable authority, the Court **ABATES** the outstanding contempt fine and **DECLARES** that Respondent Gerardo Bahena Gonzalez ("Respondent") is purged of contempt.

### I.     PROCEDURAL HISTORY AND BACKGROUND FACTS

The Court's Judgment granting Petitioner relief under the Convention sets forth in detail the underlying facts of this case.   *Bernal v. Gonzalez*, 923 F. Supp. 2d 907, 911 (W.D. Tex. 2012). Pursuant to the consent of the parties (Docs. 17, 18), the U.S. Magistrate Judge for the Western District of Texas, Midland/Odessa Division, held a bench trial and heard testimony from Petitioner and Respondent.  *Bernal*, 923 F. Supp. 2d at 911.  In accordance with Article 3 of the Convention and the International Child Custody Abduction Remedies Act, Petitioner proved by a preponderance of the evidence that C.G.B., C.D.B., and A.B. (female) were wrongfully removed from their country of habitual residence.  *Id*. at 914.  Further, Petitioner had rights of custody under the laws of the State in which the children were habitual residents immediately before removal and was exercising those

rights before removal.  *Id.*  Respondent's removal of C.G.B., C.D.B., and A.B. (female) breached Petitioner's rights of custody.  *Id.*

The Court held that the Republic of Mexico was the habitual residence of C.G.B., C.D.B., and A.B. (female), and thus, ordered Respondent to return the children to Petitioner in Mexico.  *See Bernal*, 923 F. Supp. 2d at 914–31.  The Court expressly recognized that a custody determination had to be left to the law of Mexico.  *Id.* at 930.  Yet, Respondent attempted to circumvent this Court's Judgment granting the Petition for Return of Children under the Hague Convention by presenting a default judgment divorce, entered by a Texas court on July 26, 2012, to the Office of Integral Family Development Agency, or *Desarrollo Integral de La Familia* ("DIF").  By doing so, Respondent blatantly ignored this Court's Judgment, which states "this Court's determination that C.G.B., C.D.B., and A.B. (female) were wrongfully removed" from Petitioner's custody in the Republic of Mexico "preempts the default judgment in state court that awarded sole managing custody" to Respondent.  *Bernal*, 923 F. Supp. 2d at 929.

Instead of initiating a lawsuit in a court of Mexico to modify the parties' custody arrangement, as this Court advised Respondent to do if he wanted custody of the children, Respondent relied on the preempted default judgment divorce from the Texas state court to persuade DIF to give him C.G.B. and C.D.B.  (*Id.* at 930).  Then, Respondent re-abducted C.G.B. and C.D.B and brought them from Mexico to the United States on or about February 7, 2013, directly violating the Court's Judgment and order that the children be returned to their custodial parent, Petitioner, in the Republic of Mexico.  (Doc. 79 at 2).

Approximately seven (7) months after Respondent re-abducted C.G.B. and C.D.B. and brought them back to the United States, the Court held a hearing on Petitioner's Motion to hold Respondent in contempt due to his continued refusal to return the children to Mexico.  (Doc. 79).  The Court retained jurisdiction since the wrongfully removed children, C.G.B. and C.D.B., were physically located within the Court's jurisdiction.  42 U.S.C. § 11603(b).  Because Respondent re-

abducted C.G.B. and C.D.B., bringing them back to the United States without filing a formal lawsuit in the appropriate judicial or administrative agency of the Republic of Mexico to determine, enforce, or modify his custody rights, the Court found that Respondent violated the Court's Judgment and held him in contempt.  (Doc. 79 at 4).

The Court's September 18, 2013, Contempt Order was expressly designed to coerce Respondent's compliance with the November 29, 2012, Judgment granting the Petition for Return of Children.  (Doc. 79).  "[A] fine that accrues on an ongoing basis in response to noncompliance" is a remedy in civil contempt proceedings.  *In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009).  Thus, the Court ordered Respondent to be fined $50.00 per day, starting September 18, 2013, to coerce Respondent into returning "C.G.B. and C.D.B. to Petitioner Bernal in Cabrera de Limones, Sinaloa, Mexico."  (Doc. 79 at 7).  The Court explained that the fine would accrue daily "until Respondent Bahena Gonzalez returns C.G.B. and C.D.B."  (*Id*.).  Lastly, the Court ordered Respondent's attorney to "file a notice of compliance with the Court" once Respondent returned C.G.B. and C.D.B.  (*Id*.).

On April 3, 2014, the Court held a Show Cause hearing to determine whether Respondent should still be held in contempt.  (Doc. 91).  The Court determined that Respondent remained in violation of the Court's Contempt Order for failing to return the children, C.G.B. and C.D.B., to Petitioner in Cabrera de Limones, Sinaloa, Mexico.  (*Id*.).  The Court held three more Status Conferences on May 1, 2014, May 29, 2014, and July 1, 2014, at which time the Court "learned that Respondent remains in violation of the Court's Contempt Order."  (Docs. 95, 97, 100).  Due to Respondent's failure to return C.G.B. and C.D.B. to Petitioner, the Court increased the daily fine amount from $50.00 per day to $100.00 per day, effective May 2, 2014, to accrue until Respondent "returns C.G.B. and C.D.B. to Petitioner Aguilar Bernal in Cabrera de Limones, Sinaloa, Mexico." (Doc. 95 at 2).  The Court advised Respondent that the fine would continue to accrue at one hundred dollars ($100.00) a day until he returns C.G.B. and C.D.B. to Petitioner.  (*Id*.).

On June 24, 2015, the Court held its latest Status Conference at which time the Court ruled from the bench that the contempt proceedings would be held in abeyance. (Doc. 130). At that time, the total contempt fine owing was Fifty-Three Thousand Two Hundred Dollars ($53,200.00), of which Respondent paid Five Thousand Three Hundred Dollars ($5,300.00). Therefore, the outstanding contempt fine owed was Forty-Seven Thousand Nine Hundred Dollars ($47,900.00). On June 29, 2015, the Court entered its Memorandum Opinion explaining as follows:

> The Court acknowledges that its discretion to impose sanctions has limits; there is not unlimited judicial power to impose noncompensatory civil contempt fines. *See Bagwell*, 512 U.S. at 829. "A contempt fine . . . is considered civil and remedial if it either coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained." *Id*. (internal quotation marks omitted). Significantly, "[w]here a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." *Id*. Thus, the Supreme Court of the United States has held, "a flat, unconditional fine totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Id*. (internal quotation marks omitted); *Hicks v. Feiock*, 485 U.S. 624, 633 (1988) ("If the relief provided is a fine, it is . . . punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order.").
>
> It is of the utmost importance that this Court secure Respondent's diligent compliance with the return remedy authorized under the Hague Convention and ordered by the Court's Judgment granting the Petition for Return of Children. Yet, the Court is mindful that in devising a remedy against Respondent's refusal to return C.G.B. and C.D.B. to Petitioner, the least intrusive sanction should be selected that the Court determines will achieve compliance. *Spallone*, 493 U.S. at 276; *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947) ("[W]here the purpose is to make the defendant comply, the court's discretion is otherwise exercised. It must then consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired."). Hence, at this time, the Court will not continue imposing the daily fine and the contempt proceedings shall be held in abeyance.
>
> Although sanctions are clearly warranted for Respondent's failure to comply with the Court's Judgment by re-abducting C.G.B. and C.D.B. as well as Respondent's failure to comply with the Contempt Order by refusing to return the children to Petitioner, continuing to sanction Respondent at this point in the contempt proceedings is less than satisfying. Perhaps, should such conduct persist in the future, the Court will be forced to explore additional civil contempt sanctions. However, the Court finds that Respondent has acted diligently since filing a custody lawsuit in the Republic of Mexico and serving Petitioner on August 8, 2014, to obtain resolution of the ongoing custody dispute in the courts of Mexico.

(Doc. 131).

## II.    STANDARD OF REVIEW

"A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995). "Upon a finding of contempt, the district court has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005) (citing *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000)). A coercive fine may be imposed so long as the contemnor "is afforded an opportunity to purge," i.e., a "subsequent opportunity to reduce or avoid the fine through compliance." *Bagwell*, 512 U .S. at 829. At the purgation stage, a court finding that a contemnor has not purged himself of contempt amounts to a second contempt finding. *See United States v. Brumfield*, 188 F.3d 303, 306–07 (5th Cir. 1999).

## III.    DISCUSSION

Civil contempt proceedings are remedial in nature, and for the purpose of coercing compliance with the orders of the court and compensating complainants for losses sustained by noncompliance. *See Am. Airlines*, 228 F.3d at 585. In this case, the September 18, 2013 Contempt Order makes abundantly clear that the imposition of the $50.00 per diem fine, which was later increased to $100.00 per day, was to coerce Respondent's compliance with the Court's Judgment granting the Petition for Return of Children under the Hague Convention. (Doc. 79). Respondent's re-abduction of C.G.B. and C.D.B and refusal to return the children to Petitioner in the Republic of Mexico necessitated such a fine. By imposing the fine, the Court sought to provide Respondent with the type of incentive to spur him to action and return the children to their country of habitual residence. Respondent should have complied with this Court's Judgment forthwith, and his unwillingness to comply for an extended time evidenced the need for the fine. In short, given the totality of the circumstances, the Court concludes that the fine imposed served as the only catalyst to make Respondent comply with the Court's November 29, 2012 Judgment.

The Court, however, takes into account that Respondent initiated a custody proceeding in the Court of General Jurisdiction of First Instance of Guasaves, Sinaloa, Mexico, and formally served Petitioner with a petition seeking to terminate her parental rights ("patria potestad") on August 8, 2014.  (Doc. 102 at 1).  In sum, the Court determines that Respondent, by returning the children to the Republic of Mexico and initiating a custody proceeding in the Court of General Jurisdiction of First Instance of Guasaves, Sinaloa, Mexico, has substantially complied with the Court's September 18, 2013 Contempt Order, albeit belatedly.  Accordingly, the Court hereby **DECLARES** that Respondent Gerardo Bahena Gonzalez has purged himself of contempt as of August 8, 2014.

Further, the Court abates any outstanding fine.  The Court will calculate the contempt fine from September 18, 2013, the date of the Contempt Order, to August 8, 2014, the date of Respondent's substantial compliance.  The total contempt fine accrued as of August 8, 2014, was Twenty-One Thousand Two Hundred Dollars ($21, 200.00).  To date, Respondent has paid Five Thousand Three Hundred Dollars ($5,300.00) toward his contempt fine.  Thus, the outstanding contempt fine is Fifteen Thousand and Nine Hundred Dollars ($15,900.00).  The Court hereby **ABATES** the outstanding contempt fine.

## IV.   CONCLUSION

For the reasons set forth herein, the Court **ABATES** Respondent's outstanding contempt fine and **DECLARES** that Respondent has purged himself of contempt, as found by the Court's September 18, 2013 Contempt Order, for his re-abduction and failure to return the children, C.D.B. and C.G.B., to Petitioner in the Republic of Mexico.  The parties are directed to pursue any

adjudication of parental rights in the Republic of Mexico where the children shall reside until there is a final custody determination by a court in Mexico.

It is so **ORDERED**.

SIGNED this 9th day of September, 2015.

_____
DAVID COUNTS
U.S. MAGISTRATE JUDGE